[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 26, 2006
THOMAS K. KAHN
CLERK

No. 06-11329
Non-Argument Calendar
_____

Agency Nos. A79-537-061
A79-537-062

EMMANUEL EMARCEL KUBANDI,
MARCELINE PANDI KUBANDI,
GLORIA GRACIA KUBANDI,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(September 26, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

The lead petitioner, Emmanuel Emarcel Kubandi, and his wife, Marceline Pandi Kunandi, and their minor daughter, all natives and citizens of the Democratic Republic of the Congo ("the Congo"), petition us for review of the final order of the Board of Immigration Appeals dismissing their appeal from the Immigration Judge's ("IJ's") denial of their applications for asylum under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005)).[1] In support of their asylum applications, Petitioners asserted that they were persecuted in the Congo because of Kubandi's leadership role in a political group called Christian Mission of Intercession for Change ("CMIC"). On appeal, the petitioners argue that substantial evidence does not support the BIA's adverse credibility finding as to Kubandi's testimony and that the IJ did not adequately consider the other evidence

---

[1] Because we find that Petitioners have not established a case for asylum under the INA, we do not consider whether they satisfied the higher standard for withholding of removal under the INA or relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001).

2

of persecution presented at the hearing.[2]  After thorough review of the record and careful consideration of the parties' briefs, we deny the petition for review.

In the case at bar, the BIA issued a decision in which it adopted the IJ's reasoning regarding Kubandi's credibility without making additional findings. "We therefore review the IJ's decision as if it were the BIA's." Wei Chen v. U.S. Att'y Gen., --- F.3d ----, 2006 WL 2570870 at *2 (11th Cir. Sept. 8, 2006) (citing Al Najjar, 257 F.3d at 1284).  The IJ's factual determinations are reviewed under the substantial evidence test.  See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005).  Under this highly deferential test, we "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (internal quotation marks omitted).  "Credibility determinations likewise are reviewed under the substantial evidence test." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004).  "A credibility determination, like any fact finding, may not be overturned unless the record compels it." Forgue, 401 F.3d at 1287 (internal quotation marks omitted).

---

[2]To the extent that the Petitioners challenge the manner in which the IJ conducted the asylum hearing, Petitioners did not raise this issue before the BIA and, accordingly, we lack jurisdiction to review the issue, as it is unexhausted.  See 8 U.S.C. § 1252(d)(1); Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

3

At the evidentiary hearing on Kubandi's application, the IJ heard the testimony of Kubandi and his wife, and Kubandi submitted the following evidence, which the IJ noted in his order: "the Notice to Appear [#1]; Notice of privilege of counsel and consequences of knowingly filing a frivolous application for asylum [#2]; the respondent's I-589 form [#3]; respondent's filing of supplemental documents, un-tabbed and unnumbered [#4]; Map of Democratic Republic of The Congo [#5]; Map of Africa [#6]; and Medical Board of California information [#7]." After the hearing, the IJ made the following factual findings and conclusions of law:

> The Court observed the testimony and demeanor of the respondent and finds that <u>he has not provided credible and consistent testimony.</u> His responses to questions were not logically forthcoming, straightforward, nor were they plausible, logically, or well connected. <u>Therefore, the court finds him to not be a credible witness.</u> The witness has failed to supply adequate evidence of the basis of his claims of torture and has provided photographs which appear to be altered. Additionally, the respondent has not supplied any information on the group . . . which he claims to have founded that marched against the government of The Congo, and supplies instead photographs which appear to be altered and other material which does not appeal to be original. Foremost the respondent never testified that he was stabbed while in custody of the military, a fact that the Court cannot overlook, and which is most important to the respondent's testimony.
> . . . .
> In the instant case, the respondent says he fears persecution or torture from the government of [the Congo]. However, I am not satisfied from the record that the respondent has met his burden of proof in establishing his claim for a grant of asylum is warranted. The

4

respondent's fear in this case stems from his arrest in his country. However, he does not mention in his testimony today that he was stabbed with a military knife and completely omitted that testimony from his hearing today. This is not a matter that he would seemingly forget if in fact it did indeed happen. Further, the respondent has supplied copies of photographs and says that the originals are not available, however, upon close examination of these photographs recording his march against the government it appears that they have been altered by inserting various slogans and banners to bolster his testimony regarding his pretext. The respondent further states that he has no documents to support his testimony of the group he founded, has no original phonographs as he states his friend took the pictures and sent it on a disc . . . . The court simply does not believe this to be an original untouched photograph as the banners displayed in each photograph appeared to have been inserted into the photograph. There is a serious question as to whether the group that the respondent testified that he organized really exists? <u>There are no documents to establish that the group he calls "MCIC" . . . ever existed and what little evidence the respondent submitted could have been created over any word processing computer. There are no "official" pamphlets or other literature about this organization nor any reference to it within the Country Reports for the Democratic Republic of the Congo.</u>

As to the wife's testimony, and regarding the occasion of the alleged abuse at the hands of the soldiers (police?), the respondent's wife does not have any records to indicate that she ever saw a doctor or went to a hospital for any treatment.

In total, there is insufficient proof that the respondent did in fact suffer any alleged persecution from the hands of the Kabila regime. Given the evidence, or lack thereof, and as well what strongly appears to be altered photographs for which there are no originals to view, the Court finds that the evidence and the testimony of the respondent and his wife are not sufficient to establish his eligibility for a grant of asylum.

(emphasis added). Thus, the IJ's denial of asylum was based primarily on two factors: (1) Kubandi did not provide "credible and consistent testimony" and thus, was not a "credible witness," and (2) he failed to present sufficient corroborating evidence that the MCIC -- again, his asylum application was based on his membership in this group -- existed.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is any person who is unwilling to return to his home country or to avail himself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284; 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" of future persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). The second prong of both the past- and future-persecution tests requires the

6

applicant to show that the alleged persecution was "on account of a protected ground." See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (discussing two-pronged tests for past and future persecution). Thus, to establish either type of persecution, the petitioner must show a causal connection between the persecution and the protected ground he asserts. The petitioner may establish this causal connection by "presenting specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a statutorily protected ground. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks omitted).

An adverse credibility determination alone may be fatal to an asylum application. Forgue, 401 F.3d at 1287. However, an adverse credibility finding does not alleviate the IJ's duty to consider other evidence produced by the applicant. Id. For a credibility finding to be dispositive, the IJ must make "clean determinations of credibility." Yang v. U.S. Att'y. Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (internal quotation marks omitted). "The weaker an applicant's testimony, . . . the greater the need for corroborative evidence." Id. After an adverse credibility finding is made, the applicant bears the burden of showing this decision was not supported by specific, cogent reasons or was not based on substantial evidence. Forgue, 401 F.3d at 1287. We have held that an IJ's

7

concerns about the credibility of an applicant on "key elements of the claim," combined with the applicant's failure to rebut these with sufficient corroborating evidence and explanation, supported a finding that the applicant did not qualify for asylum. Nreka v. U.S. Att'y Gen., 408 F.3d 1361, 1369 (11th Cir. 2005).

Again, from our review of the order, the IJ enumerated two primary reasons for denying asylum: (1) Kubandi's lack of credibility, and (2) Kubandi's failure to provide credible corroborating evidence that the MCIC existed, or that Kubandi had founded the group, or that Kubandi had participated in MCIC-sponsored activities that led to his persecution.[3] These factors concerned the causal connection between the alleged persecution and the alleged statutorily protected ground (here, Kubandi's MCIC membership). Before finding that Kubandi was not credible, the IJ enumerated the corroborating evidence presented to him at the hearing. Contrary to Kubandi's argument that the IJ based his decision solely on an adverse credibility determination, our careful review of the record and parsing of the IJ's order reveals that the IJ not only did not believe Kubandi, but also was

---

[3]To the extent Kubandi raises arguments that exceed the IJ's reasoning for denying asylum, we are confined to reviewing the IJ's decision. Cf. Wei Chen, 2006 WL 2570870 at *3 n.4 ("In his brief, Chen argues the merits of his claims for asylum and withholding of removal. The IJ, however, did not reach the merits of Chen's application, instead limiting his discussion to Chen's credibility. As a result, we are confined to reviewing the IJ's adverse credibility determination." (citing Gonzales v. Thomas, 126 S. Ct. 1613, 1615 (2006) (holding federal courts are not entitled to pass judgment on issues the agency did not address))).

8

unpersuaded by the additional evidence Kubandi presented in corroboration of his testimony.

On this record, we cannot say the record compels us to a different conclusion than that of the IJ's -- that is, Kubandi's evidence was insufficient to satisfy Kubandi's burden on the causal connection because he never established his membership in a statutorily protected group. Indeed, the IJ found, and our review of the record does not compel us to reach a different conclusion, that Kubandi had not established the existence of the MCIC group, let alone his membership in it. Simply put, Petitioners have not met their burden to show the IJ's decision, which was based not only on an adverse credibility determination but also on a lack of corroborating evidence, was not supported by substantial evidence. Accordingly, we deny the petition for review.

**PETITION DENIED.**